Pearson, C. J.
 

 No material fact is disputed, and the controversy depends entirely on questions of law.
 

 1. At June Term, 1855, the justices appointed a building
 
 *274
 
 committee with authority to let out the building of a court house and jail.
 

 2. In August, 1855, the building committee made a contract with the petitioner for building a jail according to certain specifications, for an agreed price, to be paid by instalments as the work progressed.
 

 3.
 
 The petitioner immediately commenced the work by collecting materials, employing workmen and hands, and laying the foundation of the jail.
 

 4. At September term, 1855, the building committee made a report setting forth the contract; whereupon, the justices disapproved of the contract, discharged the committee, and rescinded the order of June term, by which the committee was appointed, and notice was given of these orders to the petitioner, and he was informed that the justices did not wish the jail to be built.
 

 5. Notwithstanding these orders, the building committee continued to act, and the petitioner under their directions, went on with the work, and had the house done by the time specified in the contract, first of November, 1856.
 

 6. At December term, 1855, the following order passed: “ Ordered that the treasurer of public buildings be authorised to borrow $10,000.” Also, “ Ordered that the treasurer of public buildings pay over to Mr. Paschal McCoy $2000,” which he accordingly did.
 

 7. During the progress of the work, the building committee, after the orders of September and December terms, made several material alterations in the plan of the building (which they reserved a right to do by a clause in the contract,) and the house varies in these particulars from the specifications set out in the original contract.
 

 8. The building committee received the house, and gave a certificate that it was built according to contract as modified.
 

 9. The justices refused to receive the house or to pay for it.
 

 After “a return” was made by the justices, the petitioner made three “pleas” as they are termed ; neither of these pleas traverse any matter of fact, but thereby set out positions
 
 *275
 
 of law, from which, as was contended, it followed that the petitioner was entitled to an order for a peremptory mandamus — that is:
 

 1. The contract made by the building committee was valid.
 

 2. The committee had the power to make the changes in the plan of the jail.
 

 3. The committee had power to receive the jail.
 

 On the face of the- record, no matter of fact being put in issue, the intervention of a jury was uncalled for, and it was the duty of the Court to give j udginent on the facts stated. So the issues which were afterwards made up, and the action of the jury may be treated as surplusage, and the question is, did his Honor err in the conclusion that the petitioner was en-entitled to a peremptory mandamus? This Court is of opinion there is error.
 

 1. The contract was certainly valid, for the committee had full power and authority to make it under the orders of June term, and notwithstanding the subsequent action of the j ustices, if the petitioner had done the work, and built the jail
 
 according to the eontiract,
 
 the justices would have been bound to pay for it. Eor, according to an old adage, which expresses the law very forcibly, “ it takes two to make a bargain, and two to unmake it.” It was not in the power of the j ustices to repudiate the contract, and the consent of the petitioner was necessary to rescind it.
 

 2. The jail was not built according to contract, and the petitioner is forced to rely on the action of the committee, after the order of September term discharing it and rescinding the order for its appointmont, in order to show that he was authorised to depart from the specifications in the original contract, and thus establish the allegation that he has performed the contract on his part.
 

 This raises the question on which the case turns: Had the justices power to discharge the committee and revoke its authority? Eor, if it had, the subsequent action of the committee in spite of the justices, was wrongful, and the alterations of the original plan were without authority and void. As the
 
 *276
 
 petitioner was unwilling to rescind the contract, and was determined to insist on his legal right to hold the justices bound, although he was notified of their unwillingness to proceed with the building, it behooved him to see to it, that the contract was strictly performed on his part, and it is his misfortune to have failed to do so, under a mistaken idea that the committee still had power to authorise him to depart from the specifications.
 

 That a principal has power to discharge an agent and revoke his authority, is a proposition too plain to admit of discussion.
 

 On the argument, several distinctions were suggested in order to take this case out of the general rule:
 

 "Where a contract is entered into by two individuals, if one attempts to repudiate or does an act by which he is disabled from performing his part, the other may pursue one of three modes: he may concur in the repudiation and treat the contract as rescinded, or he may go on and perform his part and bring an action for the stipulated price, or he
 
 may forthwith bring am, action and recover unliquidated damages for breach of the contract.
 
 In the case of a
 
 quasi
 
 corporation like the justices, the party may agree to rescind, or he may go on and do the work, and by mandamus compel the payment of the price, but he cannot recover unliquidated damages, as the writ of mandamus does not apply. Under the terms of this contract a building committee was necessary in order to inspect the work as it progressed, and give certificates for the monthly instalments; therefore, the justices had no power to discharge the committee, unless they appointed another, within a reasonable time, for they would thus disable themselves from performing their part of the contract, and yet no remedy could be had against them to recover unliquidated damages.
 

 Admitting the premises, it shows that the remedy against an individual by action, is more ample than the remedy against a
 
 quasi
 
 corporation by mandamus; but we are unable to see how it proves that a principal cannot discharge an agent. If, by the terms of the contract, a building committee was
 
 *277
 
 necessary, the petitioner could, by a writ of mandamus, have compelled the justices to appoint another set, within reasonable time after the first was discharged; or he might have proceeded to do his work according to the contract, and compelled payment of the price, as the justices would not have been at liberty to take advantage of their own wrong in failing to appoint another committee.
 

 Another suggestion on the argument wa's, that by the terms of the contract, it is to be implied that the petitioner placed reliance on the discretion of the
 
 individuals
 
 who composed the committee and, therefore, the justices had no right to discharge them.
 

 Suppose this to be so, or suppose it had been expressed in the contract that the individuals composing the committee should mot be discharged by the justices, and others put in their places, it would not have had the effect of preventing the justices from discharging their agent, although probably, their doing so would have given the petitioner good ground for refusing to proceed with the contract
 

 It was also contended, on the argument,,that the orders at the December Term, recognized tiie existence of the committee, and ratified and confirmed their action.
 

 We are unable to see bow either order is connected with the building committee which had been discharged at the preceding term, or how it could have the effeet to resueitate them or recognize the existence of such a committee. The
 
 treasursr
 
 of
 
 public Indldinys
 
 was ordered to borrow $10,000, and he was ordered to pay the petitioner $2,000. How could this resuscitate the defunct building committee? And, so far from having the effect of ratifying and confirming the alterations which were afterwards made in the plan of the jail, it only furnishes an inference that the $2,000 was considered by the justices as an amount proper to bo paid in satisfaction of the unliquidated damages; which the petitioner had incurred by wliat work he had done on the foundations, and his outlay in materials and hire of hands up to the time when he was notified that the j ustices did not wish to proceed with the work,
 
 *278
 
 and had discharged the building committee. He then had his election, either to accept it in satisfaction and rescind the contract, or accept it under protest, as a part payment, and proceed to do the work and claim the balance of the price. He elected the latter, but failed to comply with the contract, by departing, without authority, from the original specifications. The third plea is merely a corrollary or deduction from the second and falls with it.
 

 Per Curiam,
 

 Judgment reversed, and judgment for the justices, dismissing the petition.